UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CYNTHIA HILL, GAIL WILLIAMS,
DENISE INMAN, VICKIE GORDON,
ROLANDO LOPEZ, TAURA PATE, ELLEN
ENNIS, and ANDREA HOLLY, individually
and on behalf of all others similarly situated,

                Plaintiffs,

          - against -

CITY OF NEW YORK, MICHAEL R.
BLOOMBERG, as Mayor of the City of New
York, RAYMOND KELLY, as Police
Commissioner, RICHARD F. NAPOLITANO,
CHARLES F. DOWD, MICHAEL V.
POLITO, LJUBOMIR BELUSIC, DONALD
CHURCH, DAVID LICHENSTEIN, LOCAL
1549, DISTRICT COUNCIL 37, AFSCME,
AFL-CIO, and JOHN and JANE DOES 1–20
(said names being fictitious, the persons
intended being those who aid and abetted the
unlawful conduct of the Named Defendants),

                Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
13-CV-6147 (PKC) (JO)

PAMELA K. CHEN, United States District Judge:

    Named Plaintiffs, on behalf of a class of minority New York City Police Department

("NYPD") 911 Operators, bring this action against the Defendants New York City; Mayor

Bloomberg as Mayor of New York City and Raymond Kelly as NYPD Commissioner, both in

their official capacities[1]; and Richard F. Napolitano, Charles F. Dowd, Michael V. Polito,

---

[1] Because former Mayor Bloomberg and former NYPD Commissioner Kelly are named only in their official capacities, the current City Mayor and NYPD Commissioner, respectively, Bill de Blasio and William Bratton, are automatically substituted in this action in their official capacities pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 25(d); *cf. Phillip v. Schriro*, No. 12-CV-8349 (RA), 2014 WL 4184816, at *9 (S.D.N.Y. Aug. 22, 2014). The Clerk of Court is respectfully requested to correct the caption on the docket.

Ljubomir Belusic, Donald Church, and David Lichtenstein, all in their official and individual capacities (collectively, "City Defendants"), as well as Defendant Local 1549, District Council 37, AFSCME, AFL-CIO ("Defendant Union") (collectively, "Defendants"), alleging, *inter alia*, violations of 42 U.S.C. § 1981 and § 1983. The Court granted Plaintiffs' motion for class certification under Federal Rule of Civil Procedure ("FRCP" or "Rule") 23(b)(2) on September 28, 2015. (Memorandum & Order ("M&O"), Dkt. 115.) Plaintiffs now seek an amendment to the Court's class certification order in order to effectuate the settlement the parties have reached. (Plaintiffs' Memorandum in Support of Preliminary Approval of Class Action Settlement ("Pls.' Settlement Br."), Dkt. 193, at 4–5; Letter Motion to Certify Class ("Letter Motion"), Dkt. 199, at ECF[2] 2.) For the following reasons, the Court amends its original class certification to include both a Rule 23(b)(2) and 23(b)(3) class as defined *infra*.

## BACKGROUND[3]

The Court granted Plaintiffs' motion for class certification under FRCP 23(b)(2) on September 28, 2015. (Dkt. 115.) Since this class certification, the parties have engaged in discovery and extensive settlement negotiations. (*See, e.g.*, Dkts. 128, 130, 134, 144, 158; 4/23/2018 Minute Entry; 5/31/2018 Minute Entry; 7/13/2018 Minute Entry; 9/18/2018 Minute Entry; 10/09/2018 Minute Entry; 12/07/2018 Minute Entry.) On December 21, 2018, the parties indicated that they had reached a settlement. (Dkt. 190.) Plaintiffs filed a motion seeking preliminary approval of their class action settlement (Dkts. 191, 199) and Defendants filed a motion seeking approval of the notice of proposed settlement and fairness hearing (Dkt. 194), as

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] The Court assumes the parties' familiarity with the facts of this action as previously recited in the Court's September 28, 2015 M&O, incorporates those facts herein, and summarizes only the procedural history of the instant motion.

required by Rule 23(e). As part of their motion, Plaintiffs[4] seek to amend the Court's previous class certification of two Rule 23(b)(2) classes to combine them into a single § 1981 Rule 23(b)(2) class. (Letter Motion, Dkt. 199, at ECF 2.)

## LEGAL STANDARD

"'Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation.'" *Easterling v. Conn. Dep't of Corr.*, 278 F.R.D. 41, 44 (D. Conn. 2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)); *see also* Fed. R. Civ. P. 23(c)(1) ("An order that grants or denies class certification may be altered or amended before final judgment."). In fact, "courts are 'required to reassess their class rulings as the case develops.'" *Doe v. Karadzic*, 192 F.R.D. 133, 136 (S.D.N.Y. 2000) (quoting *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999)). However, a court "may not disturb its prior findings absent some significant intervening event, or a showing of compelling reasons to reexamine the question." *Doe*, 192 F.R.D. at 136–37 (internal quotations and citations omitted).

"Settlement is relevant to a class certification." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). Though a court certifying a class for the purposes of settlement "need not inquire whether the case, if tried, would present intractable management problems" as required by Rule 23(b)(3)(D), "other specifications of [Rule 23] . . . demand undiluted, even heightened, attention in the settlement context." *Id.* at 620. "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

## DISCUSSION

The Court, in its original class certification order, certified two Rule 23(b)(2) classes:

---

[4] Defendants do not oppose this modification. (*See* Letter Motion, Dkt. 199, at ECF 2.)

> Section 1981 Racial Discrimination Rule 23(b)(2) Class: All minority individuals who are currently employed, or have been employed within three years preceding the filing of this action, by the City of New York as Police Communications Technicians ("PCTs") or Supervisor Police Communication Technicians ("SPCTs") in the NYPD Communications Section.

> FMLA Rule 23(b)(2) Class: All minority individuals who are currently working in the civil service titles of PCT and SPCT in the NYPD Communications Section who are eligible for FMLA leave.

(M&O, Dkt. 115, at 52, 65.)  In making this class certification determination, the Court noted that "these definitions are limited to operators still employed by the City since only they will benefit from injunctive relief sought in this action." (*Id.* at 52.)

Plaintiffs now seek to modify the class definitions, "to address City Defendants' concerns and to facilitate settlement of this matter." (Pls.' Settlement Br., Dkt. 193, at 5; *see also* Letter Motion, Dkt. 199, at ECF 2.)  Plaintiffs propose a single § 1981 class, to be defined as follows:

> Rule 23(b)(2) Class: All individuals who are currently employed, or have been employed within three years preceding the filing of this action on November 6, 2013, by the City of New York as Police Communications Technicians ("PCTs") or Supervisor Police Communication Technicians ("SPCTs") in the NYPD Communications Section.

(Pls.' Settlement Br., Dkt. 193, at 5.)[5]

For the reasons that follow, the Court grants Plaintiffs' modification of the class, subject to further modification by the Court, as described *infra*.

---

[5] In their Letter Motion, Plaintiffs propose a slightly different class definition:

> Section 1981 Class pursuant to Rule 23(b)(2): All individuals who were employed by the City of New York as PCTs and SPCTs in the NYPD Communications Section at any time between November 6, 2010 and October 23, 2018.

(Dkt. 199, at ECF 2.)  As discussed *infra*, since the Court will make a distinction between currently-employed and formerly-employed PCTs and SPCTs, the Court will use the original language provided by Plaintiffs in order to make the distinction clear.

## I.     Standing

"Article III standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Janes v. Triborough Bridge & Tunnel Auth.*, 889 F. Supp. 2d 462, 465 (S.D.N.Y. 2012) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir.2006)).  This necessarily includes class action cases.  To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing, *inter alia*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  "In the context of a class action, this Circuit does 'not require that each member of a class submit evidence of personal standing.'  However, 'no class may be certified that contains members lacking Article III standing.'" *Janes*, 889 F. Supp. 2d at 466 (quoting *Denney*, 443 F.3d at 263–64).

### A.     Standing as to Former Employees

Plaintiffs' proposed amended class includes former PCTs and SPCTs seeking injunctive relief.  However, former employees do not have standing to seek injunctive relief against their former employer.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364 (2011).  "[A] plaintiff generally lacks standing to seek injunctive or declaratory relief against his or her former employer, as there is no prospect that he or she will be injured in the future." *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 465–66 (S.D.N.Y. 2017).[6]  Given that Plaintiffs' proposed definition includes

---

[6] In *Kassman*, the court noted that former employees would have standing to sue for injunctive relief if they were seeking reinstatement as part of that relief.  925 F. Supp. 2d at 466.  However, in the instant action, Plaintiffs do not allege that they were terminated from their employment for improper reasons, and are not seeking reinstatement as their relief.

both current and former employees and the relief included in the proposed settlement includes injunctive relief, there is a clear standing issue.

However, "[a] court should be wary of revoking a certification order completely at a late stage in the litigation process." *Easterling*, 278 F.R.D. at 44; *cf. Woe ex rel. Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984) ("[I]t is an extreme step to dismiss a suit simply by decertifying a class, where a potentially proper class exists and can be easily created.") (internal quotations and citation omitted). Given the Court's power to modify class certification, *see* Fed. R. Civ. P. 23(c)(1)(C), the Court finds that it can address this standing issue by certifying two separate classes, one under Rule 23(b)(2), consisting solely of current employees (who seek injunctive relief), and one under Rule 23(b)(3), consisting of both current and former employees (who seek monetary relief).[7] The Court will therefore conduct its class certification analysis using the following modified class definitions:

> Section 1981 Rule 23(b)(2) class: All individuals who are currently employed by the City of New York as Police Communications Technicians ("PCTs") or Supervisor Police Communications Technicians ("SPCTs") in the NYPD Communications Section.

> Section 1981 Rule 23(b)(3) class: All individuals who are currently employed, or have been employed within the three years preceding the filing of this action on November 6, 2013, by the City of New York as Police Communications

---

[7] "Recent precedent from this [Circuit] establishes that when a district court engages in the analysis required under Rule 23(b)(2) and Rule 23(b)(3), a class can be certified seeking both declaratory and injunctive relief as well as money damages." *Stinson v. City of New York*, 282 F.R.D. 360, 380 (S.D.N.Y. 2012); *see also Easterling*, 278 F.R.D. at 41 (certifying, in a Title VII disparate impact action, both a 23(b)(2) and 23(b)(3) class); *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D.N.Y. 2009) (certifying 23(b)(2) and 23(b)(3) classes based on state law consumer claims). The Court notes that by certifying separate classes for injunctive and monetary relief, it avoids any questions as to whether claims for monetary relief can ever be certified under Rule 23(b)(2). *See Wal-Mart*, 564 U.S. at 360 (noting that the Supreme Court's opinion in *Ticor Title Insurance Co. v. Brown*, 511 U.S. 117 (1994) "expressed serious doubt about whether claims for monetary relief may be certified under [Rule 23(b)(2)]"); *see also Amara v. CIGNA Corp.*, 775 F.3d 510, 519 (2d Cir. 2014) (noting that "[t]he Supreme Court has left open the question [of] whether [even] incidental monetary relief may be sought on a class-wide basis pursuant to Rule 23(b)(2)").

Technicians ("PCTs") or Supervisor Police Communications Technicians ("SPCTs") in the NYPD Communications Section.

## B. Standing as to Non-Minority Operators Bringing Racial Discrimination Claims

The proposed amended class includes a significant definitional change: rather than a class of minority PCTs and SPCTs, Plaintiffs now ask that the class be defined to include both minority and non-minority PCTs and SPCTs. This proposed change is reflective of Plaintiffs' theory of their case, *i.e.*, "that the City's predominately non-minority dispatcher units outside the NYPD, including the [New York City Fire Department ("FDNY") and Emergency Medical Services ("EMS")] dispatcher units, are treated more favorably" than Plaintiffs' NYPD 911 Operators unit as a whole. (Letter Motion, Dkt. 199, at ECF 2; *see also* Amended Complaint ("Am. Compl."), Dkt. 77, ¶¶ 257–67.)[8]

"[A] plaintiff does not have to be a member of a racial minority to bring a claim under Section 1981; a non-minority plaintiff can allege personal injury stemming from a defendant's discriminatory conduct against a racial minority." *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 476 (S.D.N.Y. 2013); *see also Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 212 (1972) (holding that both minorities and non-minorities have standing to challenge racially discriminatory acts under the Fair Housing Act if they can show injury). For example, in *Puglisi v. Underhill Park Taxpayer Association*, 947 F. Supp. 673 (S.D.N.Y. 1996), the Court found that a non-minority plaintiff landlord had standing to sue under various racial discrimination statutes, including § 1981, because he alleged "that he suffered injuries that stemmed from discrimination against his African American tenants, who as African Americans, are members of a protected class." *Id.* at 685. Critically, the Court in *Puglisi* noted that the plaintiff landlord was not

---

[8] This proposed definition also addresses Defendants' concern regarding reverse-race discrimination lawsuits. (Letter Motion, Dkt. 199, at ECF 1.)

attempting to bring claims on behalf of his minority tenants, but instead "alleging his own injuries stemming from the racial discrimination targeted at his minority tenants." *Id.* Likewise, the non-minority 911 Operators have suffered injuries, such as the cancellation of their sick time or the imposition of mandatory double- and overtime-shifts, as a result of Defendants' alleged racial discrimination towards their majority-minority unit. Therefore, even though the non-minority 911 Operators are not themselves part of a protected class, they nonetheless have suffered personal injuries as a result of discrimination aimed at a protected class. This is enough to confer standing to the non-minority 911 Operators.

Courts in other circuits have likewise found, in the employment context, that non-minority employees have the same standing to challenge racially discriminatory acts as their minority counterparts. In *Boyd v. Illinois State Police*, the Honorable Joan Humphrey Lefkow of the Northern District of Illinois found that plaintiff-employees' theory that defendants "perceived" their majority-minority employee group as "minority" was sufficient to raise "a triable issue of fact whether defendants were motivated by race in incorporating plaintiffs into their work force on less favorable terms than would have occurred had the [employee] group not been 'majority minority.'" No. 98-CV-8348 (JHL), 2001 WL 301150, at *6 (N.D. Ill. Mar. 28, 2001). Similarly, in *Carter v. Pennsylvania*, the Honorable James Knoll Gardner of the Eastern District of Pennsylvania found that both minority and non-minority employees had standing to assert racial discrimination claims under Title VII and § 1981 because the non-minority employees were either "the unintended victims of [defendant's] intentional racial discrimination against the minorit[y]" employees or defendant "intentionally discriminated against the [non-minority employees] . . . , as well as the minority [employees], in order to cover up for their intentional discrimination against the minority [employees]." No. 08-CV-5421 (JKG), 2009 WL 3140238, at *9 (E.D. Pa. Sept. 28,

2009).  The Court found that, under either interpretation of the facts, both the non-minority and minority employees had adequately pled facts to establish injury and therefore standing.  *Id.* at *8– 9.

The same is true in the instant case.  Plaintiffs allege that the non-minority 911 Operators, as members of a majority-minority unit, have been subject to the same "overarching pattern of discriminatory conduct" (M&O, Dkt. 115, at 66) as their minority counterparts.  As a result, the non-minority 911 Operators that work in the NYPD's Communications Section have the same standing to sue.

## II.     Rule 23(a) Factors

Having determined that all potential class members would have standing, the Court next evaluates whether the proposed classes satisfy the requirements of Rule 23(a).  As part of its analysis, as indicated *infra*, the Court relies on, and incorporates by reference its September 28, 2015 decision regarding Plaintiffs' original motion for class certification.  (*See* M&O, Dkt. 115, at 54–62.)  Rule 23(a)

> permits a case to be litigated as a class action only if (1) the class is so numerous that joinder of all members is impracticable [(numerosity)]; (2) there are questions of law or fact common to the class [(commonality)]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [(typicality)]; and (4) the representative parties will fairly and adequately protect the interests of the class [(adequacy of representation)].

*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).  The Second Circuit has also recognized that "Rule 23(a) contains an implied requirement of ascertainability."  *B & R Supermarket, Inc. v. MasterCard Int'l Inc.*, No. 17-CV-2738 (MKB), 2018 WL 1335355, at *11 (E.D.N.Y. Mar. 14, 2018) (citing *In re Petrobras Sec.*, 862 F.3d 250, 266 (2d Cir. 2017)).

## A. Numerosity

Rule 23(a)(1) provides: "One or more members of a class may sue or be sued as representative parties on behalf of all members only if . . . the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "[A] plaintiff need not present a precise calculation of the number of class members[,] and it is permissible for the court to rely on reasonable inferences drawn from available facts[.]" *Velez v. Majik Cleaning Service, Inc.*, No. 03-CV-8698 (SAS), 2005 WL 106895, at *2 (S.D.N.Y. Jan. 19, 2005). In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

The Court is satisfied that the proposed classes meet this requirement. According to Plaintiffs, the City employs over 1,200 PCTs and SPCTs. (Am. Compl., Dkt. 77, ¶ 17.) The Court previously found that a class of minority PCTs and SPCTs, who constitute about 95% of the total PCTs and SPCTs the City employs in the NYPD Communications Section, was sufficiently numerous. (M&O, Dkt. 115, at 54–55.) Given that the proposed class definitions expand the class to include non-minority operators, and in the case of the proposed Rule 23(b)(3) class, former employees, the Court finds that both proposed classes are sufficiently numerous.

## B. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For a question to be common, it must be "capable of class[-]wide resolution— which means that determinations of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. The party seeking certification must demonstrate "the capacity of a class[-]wide proceeding to generate common answers apt to drive the resolution" of the case. *Id.* (emphasis omitted) (quoting Richard A.

Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

"[E]ven a single common legal or factual question will suffice" to prove commonality. *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 289 (S.D.N.Y. 2015) (quoting *Freeland v. AT & T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. 2006)).

In its original certification, the Court found that "common questions exist" sufficient to satisfy the commonality requirement of Rule 23. (M&O, Dkt. 115, at 55–57.) Specifically, the Court found that Plaintiffs' allegations that "City Defendants applied a set of practices and policies uniformly across the class as part of an *overarching* pattern of discrimination, including blanket cancellation of sick leave, mandatory double-shifts and/or overtime shifts several times a week, and automatic declarations that operators who request limited overtime as an [Americans with Disability Act ("ADA")] accommodation were unfit for duty," (M&O, Dkt. 115, at 56), created common questions, "including whether the City Defendants maintained a pervasive system of discrimination against the 911 Operators through the challenged discriminatory practices and policies, and whether the City Defendants' discriminatory intent can be inferred from statistical evidence, anecdotal evidence, or evidence that a similarly-situated group was not subjected to the same policies" (*id*).

This finding of commonality is not disrupted by the proposed addition of non-minority class members. As previously noted, the crux of Plaintiffs' allegations are that Defendants treated the 911 Operators in the NYPD Communications Section, a majority-minority group, differently than their non-majority-minority counterparts in the FDNY or EMS sections. Specifically,

> Plaintiffs do not allege that non-minority 911 Operators received favorable treatment compared to minority 911 Operators. Rather, Plaintiffs allege that the City Defendants' discriminatory intent is demonstrated by their imposition of policies and practices on the 95%-minority 911 Operators unit that were not imposed on the City's predominately non-minority dispatcher units outside the NYPD, including the FDNY and EMS dispatcher units.

(M&O, Dkt. 115, at 25.) Given that Plaintiffs' allegations have always focused on discrimination at the group, as opposed to individual, level, the addition of the non-minority 911 Operators does not destroy commonality. In fact, Defendants have acknowledged that the practices and policies that Plaintiffs challenge apply to all, rather than just the minority, 911 Operators. (M&O, Dkt. 115, at 56.) Therefore, the common questions relating to the Defendants' challenged practices and policies apply equally to the claims of the minority and non-minority 911 Operators.

## C. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Shahriar v. Smith & Wollensky Rest. Grp., Inc*., 659 F.3d 234, 252 (2d Cir. 2011) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). Typicality ensures that class representatives have the proper incentive to prove all elements of the cause of action that would be presented by individual members of the class if they were pursuing their own individualized actions. *Floyd v. City of New York*, 283 F.R.D. 153, 175 (S.D.N.Y. 2012) (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 510 (S.D.N.Y. 1996)). Commonality and typicality often merge because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5.

As with its commonality analysis, the Court does not find that its previous finding of typicality is disrupted by the proposed addition of non-minority class members to the classes. As

discussed *supra*, the claims of both the minority and non-minority 911 Operators are grounded in the same "*overarching* pattern of discrimination." (M&O, Dkt. 115, at 56.) Therefore, though all of the named Plaintiffs are minorities (*id.* at 4), their claims are still typical of the claims of the non-minority 911 Operators. For example, each named Plaintiff, like any other 911 Operator, regardless of race, alleges that he or she was subject to the same policies and practices, including blanket sick leave cancellations, mandatory overtime policies, and automatic ADA declarations.[9] Non-minority class members have also, allegedly, suffered these injuries for the same reason as their minority named Plaintiff counterparts, *i.e.*, because of Defendants' discriminatory intent towards their majority-minority unit. Therefore, the Court finds that the claims of the named Plaintiffs are typical of the claims of the proposed classes.[10]

### D. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The representative parties may be found inadequate if there are conflicts of interest between the named plaintiffs and the class they seek to represent. *Amchem*, 521 U.S. at 625. "Adequacy of representation is evaluated in two ways: (1) by looking to the qualifications of plaintiffs' counsel; and (2) by examining the interests of the named plaintiffs." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 164 (S.D.N.Y. 2014) (quoting

---

[9] Furthermore, as noted in the Court's original certification "[t]he factual variations in each named Plaintiff's experiences with these policies do not destroy typicality so long as the dispute issues occupy the same degree of centrality between the named representatives and the class." (M&O, Dkt. 115, at 59 (citing *Caridad v. Metro–N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir.1999); and *Latino Officers Ass'n v. City of New York*, 209 F.R.D. 79, 88 (S.D.N.Y.2002)).)

[10] As the Court noted in its previous certification, named Plaintiffs Cynthia Hill and Andrea Holly, who are retired, do not have standing to seek injunctive relief and therefore cannot be named Class Representatives for the purposes of the Rule 23(b)(2) class. However, as former employees, they do have standing to seek monetary relief, and therefore can be Class Representatives for the 23(b)(3) class.

*Flores v. Anjost Corp.*, 284 F.R.D. 112, 128–29 (S.D.N.Y. 2012)).  In examining the interests of named plaintiffs, courts consider whether they are prepared to fully litigate the action or have any known conflicts with other class members.  *Shayler v. Midtown Investigations, Ltd.*, No. 12-CV-4685 (KBF), 2013 WL 772818, at *5 (S.D.N.Y. Feb. 27, 2013).  A conflict of interest "must be fundamental" and concrete to defeat a motion for certification.  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quotation omitted).  In addition, class counsel must be "'qualified, experienced[,] and generally able' to conduct the litigation."  *In re Drexel Burnham Lambert Grp. Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)).

The Court finds that the named Plaintiffs continue to be adequate class representatives, notwithstanding the proposed change to the makeup of the class.  The Court does not believe that the interests of the minority named Plaintiffs are in fundamental conflict with the interests of proposed non-minority class members because, as discussed *supra*, all class members, regardless of their race, encountered the same discriminatory practices and policies that are at the core of this action.  The Court also finds that class counsel continues to be competent and adequate as they have navigated this action successfully through the discovery and settlement process.  The Court therefore finds that the adequacy requirement of Rule 23 is satisfied as to the proposed new classes.

### E.    Ascertainability

Under the Second Circuit's implied ascertainability requirement, "a class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries."  *In re Petrobras Sec.*, 862 F.3d 250, 257 (2d Cir. 2017).  The party seeking certification is not "require[ed to make] a showing of administrative feasibility at the class certification stage."  *Id*. at 265.  Both proposed classes are ascertainable because the membership can be determined with

reference to objective criteria. Specifically, both classes consist of employees within a specific NYPD unit who held specific titles over a defined period of time. Therefore, the implied requirement of ascertainability is also satisfied.

*    *    *

Accordingly, the Court finds that the two proposed Rule 23(b) classes satisfy all four requirements of Rule 23(a), as well as the additional implied requirement of ascertainability.[11]

## III.  Rule 23(b) Factors

Having found that Rule 23(a)'s requirements are satisfied, the Court must now determine whether the proposed classes satisfy the relevant requirements under Rule 23(b).

---

[11] By finding that a proposed class of minority and non-minority class members alleging racial discrimination claims satisfies the requirements of Rule 23(a), the Court respectfully disagrees with previous decisions in this Circuit finding that "[i]t is impossible . . . for [D]efendants to have engaged in racial discrimination against both minorities and non-minorities at the same time." *Strykers Bay Neighborhood Council, Inc. v. City of New York*, 695 F. Supp. 1531, 1537 (S.D.N.Y. 1988) (denying class certification because "[t]he claims of minority and non-minority class members are . . . inconsistent with each other [and] [b]ecause of this inherent inconsistency, it is impossible to find a representative who can adequately represent the entire class as required by Rule 23(a)(4)" ); *see also 3004 Albany Crescent Tenants' Ass'n v. City of New York*, No. 95-CV-10662 (BSJ), 1999 WL 1067891, at *3 (S.D.N.Y. Nov. 24, 1999) (denying class certification for failing to satisfy commonality and typicality because "the claims of non-minority tenants and minority tenants in the proposed class are inconsistent").

The Court finds that the reasoning regarding standing in *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205 (1972), *Gladstone, Realtors v. Bellwood*, 441 U.S. 91 (1979), and *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), which all held that a non-minority plaintiff could sue for racial discrimination under the Fair Housing Act, is relevant to the determinations required under Rule 23(a) in the employment context. In the same way that "[e]veryone in a neighborhood, regardless of race, is aggrieved by housing discrimination practices, [and therefore] . . . has claims typical of the others," *Toledo Fair Hous. Ctr. v. Nationwide Mut. Ins. Co.*, 703 N.E.2d 340, 347 (Ohio Ct. Com. Pl. 1996), every employee in a workplace, aggrieved by the discriminatory policies and practices aimed at that workplace, has the same type of claim in an action challenging those policies. Ensuring that class action claims are sufficiently congruent is the underlying purpose of most of Rule 23(a)'s requirements. *See Wal-Mart*, 564 U.S. at 349 n.5 (noting that the commonality, typicality, and adequacy-of-representation requirement all tend to merge because all three inquiries "serve as guideposts for determining . . . whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence").

### A.     FRCP 23(b)(2)

A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "A Rule 23(b)(2) class is appropriate only when 'a single injunction or declaratory judgment would provide relief to each member of the class.'"  *Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 68 (S.D.N.Y. 2015) (quoting *Wal-Mart*, 564 U.S. at 360).  "It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant."  *Wal-Mart*, 564 U.S. at 360.

As with its Rule 23(a) analysis, the Court relies on, and incorporates by reference its September 28, 2015 decision regarding Plaintiffs' original motion for class certification.  (*See* M&O, Dkt. 115, at 62–65.)  The Court does not find that the addition of non-minority class members changes its analysis as to whether certifying a class seeking injunctive relief is appropriate.  All of the Defendants' challenged actions—*e.g.*, blanket cancellation of sick leave, imposition of mandatory double- or overtime-shifts, and requiring 911 Operators to undergo "sham" medical examinations when they requested reasonable ADA accommodations—were enforced against the non-minority 911 Operators as much and in the same manner as they were enforced against their minority counterparts.  Likewise, Defendant Union's alleged failure to protect the 911 Operators is equally applicable to both the minority and non-minority Operators.  Therefore, Defendants have acted on grounds generally applicable to the proposed larger class.  In fact, the Court notes that even if the class had not been changed to include non-minority class members, those employees would nonetheless have stood to gain from the proposed injunctive relief in the settlement, as it requires Defendants to implement changes that will affect the whole

unit.  Therefore, the Court certifies a Rule 23(b)(2) class of current employees to seek declaratory and injunctive relief.

**B.     FRCP 23(b)(3)**

A class may be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

**1.     Predominance**

"With respect to common issues, Rule 23(b)(3), by its plain terms, imposes a 'far more demanding' inquiry into the common issues which serve as the basis for class certification."  *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015) (quoting *Amchem*, 521 U.S. at 623–24).  "Rule 23(b)(3), however, does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to class[-]wide proof."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (internal quotations, brackets, and citation omitted).  "That is, '[i]ndividual questions need not be absent.  The text of Rule 23(b)(3) itself contemplates that such individual questions will be present.  The rule requires only that those questions not predominate over the common questions affecting the class as a whole.'"  *Sykes*, 780 F.3d at 81 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012)); *see also Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) ("Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.").  "Although predominance is a more stringent inquiry, 'satisfaction of the typicality requirement of Rule 23(a) . . . goes a long

way toward satisfying the Rule 23(b)(3) requirement of commonality.'" *Stinson v. City of New York*, 282 F.R.D. 360, 382 (S.D.N.Y. 2012) (quoting *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir.1986)).

In order to assert a pattern or practice disparate treatment claim, Plaintiffs must show that "(1) the alleged racial discrimination amounted to more than sporadic acts of discrimination, but rather the defendant's 'standard operating procedure' or the 'regular rather than unusual practice,' and (2) the discrimination was directed at a class of victims." (M&O, Dkt. 115, at 17 (quoting *United States v. City of New York*, 717 F.3d 72, 83 (2d Cir. 2013)).) In the instant action, the gravamen of every class member's claim is that Defendants engaged in an "*overarching* pattern of discrimination, including blanket cancellation of sick leave, mandatory double-shifts and/or overtime shifts several times a week, and automatic declarations that operators who request limited overtime as an ADA accommodation were unfit for duty." (M&O, Dkt. 115, at 56.) These claims are provable at a class-wide level, based on evidence showing that Defendants had such policies in place and that they were uniformly enforced against 911 Operators in the NYPD Communications unit. (*Cf.* M&O, Dkt. 115, at 22 (noting that at the initial liability phase, instances of discrimination against specific employees are not required).) In this way, the nature of Plaintiffs' claim lends itself to the need for generalized proof to satisfy the predominance requirement: the essence of a pattern-or-practice claim is that if a pattern or practice exists as to one employee, it exists as to all employees given that the claim requires that the employer's behavior be the "standard operating procedure."

Furthermore, Plaintiffs' claim that these policies are the result of Defendants' discriminatory intent are also subject to generalized proof, since Plaintiffs allege that Defendants did not impose these policies on similarly situated non-minority groups, such as the FDNY and

EMS dispatchers. (*See* M&O, Dkt. 115, at 24.) The evidence required to prove such a claim will be equally applicable to all class members, since it requires analysis at the group level. (*See* M&O, Dkt. 115, at 25–26 ("Plaintiffs allege that the City Defendants' discriminatory intent is demonstrated by their imposition of policies and practices on the 95%-minority 911 Operators *unit* that were not imposed on the City's predominately non-minority dispatcher *units* outside the NYPD, including the FDNY and EMS dispatcher units." (emphasis added)).) Proving such a claim would likely also involve statistical evidence, an example of generalized proof. *See Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 82–83 (S.D.N.Y. 2018) (noting that in a disparate treatment pattern-or-practice claim, "Plaintiffs' statistical evidence of . . . disparities is the type of generalized proof that satisfies the predominance requirement").

Of course, even if the answers to these common questions show that Defendants are liable, some individualized determinations might be required. (*See* M&O, Dkt. 115, at 23 (noting that "if Plaintiffs succeed in showing that the City Defendants maintained a discriminatory pattern or practice, individual adverse employment decisions will be litigated at the remedial phase").) However, "[t]he individualized nature of the potential damages does not preclude a finding that common questions of law and fact predominate over individualized damages." *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 435 (S.D.N.Y. 2009) (internal quotations and citations omitted); *cf. Wal-Mart*, 564 U.S. at 362 ("[I]t [is] clear that individualized monetary claims belong in Rule 23(b)(3)."). Accordingly, the Court finds that Rule 23(b)(3)'s predominance requirement is satisfied.

## 2. Superiority

"The second prong of Rule 23(b)(3) requires that Plaintiffs demonstrate that a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Stinson*, 282 F.R.D. at 383 (quoting Fed. R. Civ. P. 23(b)(3)).

> The matters pertinent to [superiority] include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *see also Sykes*, 780 F.3d at 82 ("[W]hile these factors, structurally, apply to both predominance and superiority, they more clearly implicate the superiority inquiry."). However, in the context of class action settlements, the Court is not required to consider the "likely difficulties in managing a class action." *See Amchem*, 521 U.S. at 620. "Class actions are the superior method for resolving controversies when the main objects of Rule 23 are served, namely the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 479–80 (E.D.N.Y. 2001) (citing *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)); *see also Amchem*, 521 U.S. at 617 (noting that the Advisory Committee, in outlining the factors of Rule 23(b)(3), "had dominantly in mind [the] vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all") (internal quotations and citation omitted).

In the instant case, the Court finds that the relevant superiority factors weigh in favor of certifying the proposed Rule 23(b)(3) class. The Court is not aware of any other litigation concerning the controversy at issue in this action. That this action is over five years old (*see* Dkt. 1) also suggests that potential class members do not have a strong interest in pursuing litigation on

their own. This is not surprising, given that the likely monetary relief is not likely to exceed the costs of pursuing an individual claim. (*Cf.* Proposed Settlement Agreement, Dkt. 199-1, at 9–10 (class members will receive a total of $205 in monetary compensation).); *see also Stinson*, 282 F.R.D. at 383 ("the relatively small amount of damages suffered by each individual plaintiff decreases the possibility of individual lawsuits being filed"); *Jermyn*, 256 F.R.D. at 436 (finding superiority where "[e]ach class member's claim is too small to warrant bringing an individual lawsuit"). Furthermore, in light of the potential class size of over 1,000 current and former employees, it is clearly desirable to concentrate the litigation of their claims into a single action. The Court therefore finds that the superiority requirement of Rule 23(b)(3) is satisfied.

*    *    *

Because Plaintiffs have satisfied both the predominance and superiority requirements of FRCP 23(b)(3), this Court certifies a Rule 23(b)(3) class of current and former employees to seek monetary relief.

## CONCLUSION

For the reasons stated herein, the Court amends its previous class certification and certifies the following two classes in this action:

> Section 1981 Rule 23(b)(2) class: All individuals who are currently employed by the City of New York as Police Communications Technicians ("PCTs") or Supervisor Police Communications Technicians ("SPCTs") in the NYPD Communications Section.

> Section 1981 Rule 23(b)(3) class: All individuals who are currently employed, or have been employed within the three years preceding the filing of this action on November 6, 2013, by the City of New York as Police Communications Technicians ("PCTs") or Supervisor Police Communications Technicians ("SPCTs") in the NYPD Communications Section.

SO ORDERED.

*/s/ Pamela K. Chen*
PAMELA K. CHEN
UNITED STATES DISTRICT JUDGE

Dated: April 29, 2019
        Brooklyn, New York